1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAMIN NIKOOSERESHT

                Petitioner,

    v.

BEN CURRY, Warden, Correctional Training
Facility, Soledad

                Defendant(s).

_____/

No. C 06-04357 MHP

**ORDER TO SHOW CAUSE**

      Petitioner Ramin Nikooseresht, a state prisoner at the Correctional Training Facility in Soledad, California, brought this petition seeking a writ of habeas corpus pursuant to 28 U.S.C. section 2254 to challenge his denial of parole.  His petition is now before this court for review pursuant to 28 U.S.C. section 2243 and Rule 4 of the Rules Governing Section 2254 Cases. Jurisdiction to address a petition for writ of habeas corpus exists in the district of incarceration and in the district of conviction.  28 U.S.C. § 2241(d).  Although venue is therefore proper in either the district of confinement or the district of conviction, traditionally California federal courts hear petitions for a writ of habeas corpus in the district of conviction.  Laue v. Nelson, 279 F. Supp. 265, 266 (N.D. Cal. 1968) (Weigel, J.).  Venue lies in this district because petitioner was convicted in San Francisco County Superior Court.

BACKGROUND[1]

Petitioner was convicted of second degree murder in violation of California Penal Code section 187.  On February 10, 1993, following his conviction, petitioner was sentenced in the San Francisco County Superior Court to fifteen years to life imprisonment.  Petitioner does not challenge his conviction, but instead challenges the execution of his sentence.

Petitioner contends that at the time of his conviction his minimum eligible parole date was February 7, 2003[2].  At the time of he filed his petition, petitioner had served approximately 14.5 years of his sentence, taking into account pre-conviction credit for good behavior and time served. Petitioner contends that he is entitled to five years of additional post-conviction credit under California Code of Regulations, title 15, section 2410.  Thus, petitioner claims to have served more than nineteen years of his sentence.

Petitioner's initial parole consideration hearing took place on May 16, 2002.  The Board of Parole Terms ("BPT") denied petitioner's request for a duration of two years, stating that "the [commitment] offense was carried out in an especially cruel and callous manner . . .demonstrat[ing] an exceptionally callous disregard for human suffering" and that "[petitioner] still needs to develop and enhance his ability to cope with stress in a nondestructive manner."

The BPT heard petitioner's second request for parole on August 23, 2004.  Petitioner's Life Prisoner Evaluation Report, prepared by a correctional counselor and supported by another correctional counselor, the facility captain and the classification and parole representative, found that petitioner would "pose a low degree of threat to the public," and that he would "have a successful parole."  The staff psychologist characterized petitioner as being in "the lowest risk category for community release."  The BPT again denied petitioner's request for parole, noting that the commitment crime was committed in an "especially violent and brutal manner," "dispassionate[ly]" and with "a callous disregard for human suffering."  The BPT also said that the psychological evaluation was "not totally supportive of release."

Petitioner contends that the failure of the BPT to find him suitable for parole during his second parole consideration hearing on August 23, 2004 violated his constitutional due process

1   rights in several respects.  First, petitioner contends that there was insufficient evidence to support

2   the BPT's finding of unsuitability.  Second, petitioner contends that the BPT impermissibly acted as

3   a fact-finder regarding the commitment offense, and used its findings to justify its decision.  Third,

4   petitioner contends that the BPT's statement of reasons for denial of parole is constitutionally

5   inadequate.  Fourth, petitioner contends that the BPT's finding that petitioner should pursue further

6   self-help is baseless.  Fifth, petitioner contends that the BPT's refusal to grant parole despite his

7   suitability under every factor in California Code of Regulations, Title 15, section 2402(d) comprises

8   a violation of due process.  Sixth, petitioner contends that the BPT's fact-finding procedure cannot

9   survive intrinsic review and therefore cannot be presumed correct.

10        In addition, petitioner makes several claims based on challenges to California and federal

11   statutory and common law.  Petitioner argues that the courts have misinterpreted or ignored

12   California Penal Code section 3041, resulting in a violation of due process based on petitioner's

13   liberty interest in parole.  Petitioner also argues that courts have mistakenly applied the "some

14   evidence" standard posited in <u>Superintendent v. Hill</u>, 472 U.S. 445, 455–56 (1985), to parole

15   decisions pursuant to California state law.  Finally, petitioner  argues that California Code of

16   Regulations, title 15, section 2402 sets forth criteria that are unconstitutionally vague.

17

18   <u>LEGAL STANDARD</u>

19        A district court may entertain a petition for writ of habeas corpus "in behalf of a person in

20   custody pursuant to the judgment of a State court only on the ground that he is in custody in

21   violation of the Constitution or laws of the United States."  28 U.S.C. § 2254(a).  The purpose of the

22   writ of habeas corpus is to "protect[] individuals from unconstitutional convictions and . . . to

23   guarantee the integrity of the criminal process by assuring that trials are fundamentally fair."

24   <u>O'Neal v. McAninch</u>, 513 U.S. 432, 442 (1995); <u>see also</u> <u>Brecht v. Abrahamson</u> 507 U.S. 619,

25   633–34 (1993).

26        A district court shall "award the writ or issue an order directing the respondent to show cause

27   why the writ should not be granted, unless it appears from the application that the applicant or

28

3

1   person detained is not entitled thereto." 28 U.S.C. § 2243. A district court may summarily dismiss a

2   habeas petition where "it plainly appears from the face of the petition and any exhibits annexed to it

3   that the petitioner is not entitled to relief in the district court." Hendricks v. Vasquez, 908 F.2d 490,

4   491 (9th Cir. 1990) (quoting 28 U.S.C. § 2254, Rule 4) (internal quotation marks omitted).

5   Summary dismissal is appropriate only when the allegations in the petition are vague, conclusory,

6   palpably incredible, patently frivolous or false. Id.

7

8   DISCUSSION

9   I.      Due Process Claims

10          Petitioner has a federally protected liberty interest in parole. See, e.g., Sass v. Cal. Bd. of

11   Prison Terms, No. 05-14655, ___ F.3d ___, 2006 WL 2506393, at *3 (9th Cir. August 31, 2006).

12   The Fifth and Fourteenth Amendments prohibit the government from depriving an inmate of life,

13   liberty, or property without due process of law. U.S. CONST. amends. V, XIV. In the parole context,

14   a violation of an inmate's due process occurs when (1) the inmate has been deprived of a

15   constitutionally protected liberty interest in parole, and (2) the inmate has been denied adequate

16   procedural protections in the parole process. See, e.g., Biggs v. Terhune, 334 F.3d 910, 913 (9th

17   Cir. 2003). Petitioner argues that his due process rights were violated by the parole board and by the

18   state courts hearing his appeals and habeas petitions. Petitioner raises several claims in support of

19   his argument.

20          First, petitioner argues that there is insufficient evidence to support the BPT's finding of

21   unsuitability for parole. To satisfy due process requirements, decisions of the BPT must be

22   supported by "some evidence." See Board of Pardons v. Allen, 482 U.S. 369, 377–78 (1987) (where

23   a state statute contains mandatory language creating a presumption of parole, a parole board cannot

24   deny parole unless it first meets statutory prerequisites); Morales v. Cal. Dep't of Corrs., 16 F.3d

25   1001, 1005 (9th Cir. 1994) (due process requires that "some evidence" must support the parole

26   authority's decision), rev'd on other grounds, 514 U.S. 499 (1995); Biggs, 334 F.3d at 915 (relying

27   on the "some evidence" standard). To determine whether the state met the "some evidence"

28

4

United States District Court

For the Northern District of California

1    standard, this court must determine whether there is any evidence in the record to support the BPT's

2    denial.  Superintendent v. Hill, 472 at 455–56.  Additionally, this evidence must have an "indicia of

3    reliability."  McQuillon v. Duncan, 306 F.3d 895, 904 (9th 2002), citing Jancsek v. Or. Bd. of

4    Parole, 833 F.3d 1389, 1390 (9th Cir. 1987).  Thus, an allegation of  insufficiency of the evidence to

5    support the denial of parole states a cognizable claim for a due process violation.

6         Second, petitioner contends that the BPT impermissibly used its power to find facts

7    regarding the commitment offense other than those used to convict petitioner in its decision to deny

8    parole.  Petitioner argues that this constitutes a due process violation and contradicts Supreme Court

9    cases interpreting 28 U.S.C. section 2254(d).   In this regard, petitioner apparently raises three

10   claims: that the BPT is biased against petitioner, that the BPT's findings did not have "some indicia

11   of reliability" and that the state court's factual findings are incorrect.

12        Due process dictates that a decision-maker determining a prisoner's parole date be unbiased.

13   O'Bremski v. Maas, 915 F.2d 418, 422 (9th Cir. 1990) (an inmate is "entitled to have his release

14   date considered by a Board that [is] free from bias or prejudice."); see also Withrow v. Larkin, 421

15   U.S. 35, 47 (1975) ("Not only is a biased decision-maker constitutionally unacceptable but 'our

16   system of law has always endeavored to prevent even the probability of unfairness.'" (quoting In re

17   Murchison, 349 U.S. 133, 136 (1955)).  Therefore, the allegation that the BPT is biased states a

18   cognizable claim for a due process violation.

19        An allegation that the BPT's findings lack any indicia of reliability also states a cognizable

20   claim for a due process violation.  As discussed above, under the "some evidence" standard,

21   evidence examined by the BPT must have "some indicia of reliability."  McQuillon, 306 F.3d at 904.

22   To the extent that petitioner's allegation regarding the facts found by the BPT amounts to an

23   assertion that the evidence had no indicia of reliability, petitioner states a cognizable claim.

24        An allegation that the state court's fact-finding procedure is incorrect also states a cognizable

25   claim, and is discussed in conjunction with petitioner's allegations regarding this court's review of

26   the state's fact-finding procedure, *infra*.

27        Third, petitioner contends that the BPT's statement of reasons for its denial of petitioner's

28

5

1   parole is inadequate.  Petitioner contends that the BPT's statement merely "recites" the commitment

2   offense as a basis for its denial of parole, and "lists" terminology from the "parole denied"

3   worksheet, without support from valid evidence, and with no statement regarding petitioner's

4   current "risk of danger to society."  The BPT's statement of reasons need not cite to evidence in the

5   record to support its conclusions and is meant to guide a prisoner in his or her future efforts to

6   achieve parole.  Williams v. Bd. of Prison Terms, No. CIVS022323LKKKJMP, 2006 WL 463128, at

7   *10 (E.D. Cal. Feb. 24, 2006) (citing Greenholtz v. Inmates of Neb. Penal & Corrs. Complex, 442

8   U.S. 1, 15–16 (1979) and Janscek v. Or. Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987)).

9   However, if the BPT denied petitioner's parole without fulfilling the "some evidence" standard

10  developed in Superintendent v. Hill, then petitioner's claim would be cognizable.  Accordingly,

11  petitioner's allegation that the reasons given for denying parole are inadequate states a cognizable

12  claim for a due process violation.

13          Fourth, petitioner alleges that the BPT's finding that petitioner should enroll in further self-

14  help programs is baseless.  Petitioner argues that his psychological evaluations considered by the

15  BPT demonstrate that petitioner does not need further self-help, and that he is an appropriate

16  candidate for parole release consideration.  Petitioner's allegation that there are no facts to support

17  the BPT's finding about petitioner's mental health, insofar as it supports the board's denial of

18  petitioner's parole, states a cognizable claim.  As discussed *supra*, due process requires that some

19  evidence support the BPT's denial of petitioner's parole.

20          Fifth, petitioner argues that he is suitable for parole under each of the factors in California

21  Code of Regulations, Title 15, section 2402(d).  A finding of factors "tending" to show suitability, as

22  set forth in section 2402(d), is not cognizable as an independent claim for habeas relief.  This

23  "claim" instead appears to support of petitioner's claim that there is insufficient evidence to support

24  the BPT's finding of unsuitability for parole.

25          Sixth, petitioner argues that the state's fact-finding procedure cannot survive the intrinsic

26  review set forth in Taylor v. Maddox, 366 F.3d 992 (9th Cir. 2004) cert. denied, 543 U.S. 1038

27  (2004), and that consequently, the state's factual findings cannot be presumed correct.  This court

28

must review the state court's finding under 28 U.S.C. section 2254(d) (a writ of habeas corpus may be granted where the state's actions "resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding").  In applying the standards set forth in 28 U.S.C. section 2254, the federal court must review the "'last reasoned decision' by a state court," which, in this case, is the opinion of the San Francisco Superior Court. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (internal quotation marks omitted)).  Although this court presumes state court findings to be correct, petitioner can rebut this presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); see also Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir.) (en banc), cert. denied, 522 U.S. 1008 (1997) overruled on other grounds by Lindh v. Murphy, 520 U.S. 320 (1997). This court will find a factual determination of the state court "unreasonable if it is so clearly incorrect that it would not be debatable to reasonable jurists."  Jeffries at 1500 (citations and internal quotation marks omitted); see also Taylor, 366 F.3d at 999 ("A federal court may not second-guess a state court's fact-finding process unless . . . it determines that the state court was not merely wrong, but actually unreasonable").  Additionally "[f]ailure to consider key aspects of the record is a defect in the fact-finding process" of the state court and may compel the conclusion that the state court's decision was based on an unreasonable determination of the facts presented.  Taylor, 366 F.3d at 1008, 1005 (citing Miller-El v. Cockrell, 537 U.S. 322, 346 (2003); Collins v. Rice, 348 F.3d 1082, 1097 (9th Cir. 2003)).  Thus, to the extent that petitioner raises the possibility that the state court findings were unreasonable under 28 U.S.C. section 2254(d), he states a cognizable claim.

Petitioner also relies upon his assertion that the "some evidence" standard is incorrect in support of his contention. To the extent petitioner's assertions regarding the fact-finding procedure of the state court rely on his disavowal of the "some evidence" standard, his claim is not cognizable (as discussed *infra*) and is dismissed without leave to amend.  However, an allegation that the state's fact-finding process was conducted pursuant to an unreasonable application of Supreme Court law is a cognizable claim under 28 U.S.C. section 2254(d).  Upon receipt of a full record, this court can review the evidence underlying the BPT's decision to determine whether it is "actually

7

1    unreasonable." <u>Taylor</u>, 266 F.3d at 999.

2

3    II.    <u>Claims Challenging Prior Precedent</u>

4            Petitioner argues that certain California and federal statutes and decisions are contrary to

5    Supreme Court law.  Petitioner's claims in this respect do not allege a misapplication of law to

6    petitioner's case, but instead argue that the law itself is incorrect. Petitioner consequently urges this

7    court to employ analysis contrary to settled precedent.  This court, however, must follow Ninth

8    Circuit and Supreme Court precedent in its analysis of petitioner's claims.

9            First, petitioner contends that the BPT and the California state courts misinterpreted

10   California Penal Code section 3041[3] to repeatedly and impermissibly deny petitioner parole,

11   violating petitioner's due process rights.  Section 3041(a) provides, in relevant part, that "[o]ne year

12   prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or

13   deputy commissioners shall again meet with the inmate and shall normally set a parole release date."

14   Section 3041(b) provides, in relevant part,

15                  [t]he panel or the board, sitting en banc, shall set a release date unless it
                    determines that the gravity of the current convicted offense or offenses, or the
16                  timing and gravity of current or past convicted offense or offenses, is such
                    that consideration of the public safety requires a more lengthy period of
17                  incarceration for this individual, and that a parole date, therefore, cannot be
                    fixed at this meeting.
18
     Petitioner argues that the recent cases <u>In re Dannenberg</u>, 34 Cal. 4th 1061 (2005), and <u>Sass v. Cal.</u>
19
     <u>Bd. of Prison Terms</u>, 376 F. Supp. 2d 975 (2005), <u>aff'd</u> ___ F.3d ___, 2006 WL 2506393 (9th Cir.
20
     August 31, 2006), *inter alia,* allow the state to override jurisprudence establishing that the
21
     mandatory language of Penal Code section 3041 creates a liberty interest, allowing the public safety
22
     exception posited in section 3041(b) to swallow the "rule" that parole "shall normally be" granted.
23
     Relying on cases like <u>Danenberg</u> and <u>Sass</u>, petitioner argues, allows the state to employ the public
24
     safety exception set forth in section 3041 to deny parole for every convicted murderer, regardless of
25
     any other factors.
26
            The <u>Dannenberg</u> court held that the language of section 3041 "belies the notion of a
27
     *mandatory duty* to set a release date for all indeterminate life inmates," which is the precursor to a
28

1    finding of a statutorily created liberty interest.  Dannenberg, 34 Cal. 4th at 1087 (emphasis in

2    original).  It also holds that "the most natural and reasonable way to read either version is that

3    subdivision (a) applies only if subdivision (b) does not apply."  Id.  The Dannenberg court also

4    cautioned, however, that "sole reliance on the commitment offense might, in particular cases, violate

5    section 3041, subdivision (a)'s provision that a parole date 'shall normally be set' . . . and might thus

6    also contravene the inmate's constitutionally protected expectation of parole."  Id. at 1094.  Thus,

7    while Dannenberg may have prescribed limitations on the liberty interest created by section 3041, it

8    has not completely eliminated that interest.

9            The district court holding in Sass found that there is no liberty interest in parole created by

10   section 3041, and that therefore the BPT's denial of petitioner's claim did not violate due process.

11   Sass, 376 F. Supp. 2d at 982–83 (discussing Dannenberg, 34 Cal. 4th at 1084, 1088–89, 1097–98).

12   After the instant petition was filed, the Ninth Circuit affirmed the district court decision in Sass, but

13   overturned the court's findings regarding the liberty interest created in California Penal Code section

14   3041.  Sass, 2006 WL 2506393.  The Ninth Circuit found that, contrary to petitioner's assertions,

15   Dannenberg did not eliminate prisoners' liberty interest in parole.  Id. at *3; see also Dannenberg, 34

16   Cal. 4th at 1089 n.18 (noting that petitioner has a liberty interest in parole "to the extent that the

17   state law provides it" and that petitioner's only procedural due process claim was that the parole

18   board lacked "some evidence" to deny his parole).  Instead, Dannenberg conducted a due process

19   analysis to determine whether petitioner's liberty interest under section 3041 was violated.  Id.  The

20   court held that there was no implicit finding regarding the existence or nonexistence of a liberty

21   interest in section 3041.  Id.  Because petitioner's argument about Dannenberg's unconstitutionality

22   is premised on the notion that Dannenberg completely eliminates petitioner's liberty interest in

23   parole, and since controlling Ninth Circuit authority has held that Dannenberg preserves that

24   interest, petitioner's argument cannot stand and is dismissed without leave to amend.

25           Petitioner's argument with respect to the Dannenberg holding also relies in part on the

26   assumption that this court cannot apply the "some evidence" standard in its due process analysis.

27   This is petitioner's second assertion that California and federal statute and case authority is contrary

28

9

1  to Supreme Court law.  The U.S. Supreme Court in <u>Superintendent v. Hill</u>, reviewing the findings of

2  a Massachusetts disciplinary board, established that a reviewing court must find that there was

3  "some evidence" to support the conclusions of the disciplinary board.  472 U.S. at 455–56; <u>see also</u>

4  <u>McQuillion</u>, 306 F.3d at 904 (applying the "some evidence" standard to disciplinary proceedings

5  held in California).  The Ninth Circuit later adopted the "some evidence" standard to apply in the

6  parole context, and noted that the evidence the BPT relies on must have "some indicia of reliability."

7  <u>Biggs</u>, 334 F.3d at 915.

8          Petitioner argues that the "some evidence" standard should not apply to findings of the BPT

9  because the standard of proof in the Massachusetts disciplinary statutory context of <u>Superintendent</u>

10 <u>v. Hill</u> differs from the context of California Penal Code section 3041.  Petitioner argues that section

11 3041, via its creation of a liberty interest in parole, shifts the burden of proof to the state to prove by

12 a preponderance of the evidence that petitioner fits within the section 3041(b) public safety

13 exception.  Petitioner claims that the California courts adopted the "some evidence" standard

14 without analysis and cites to <u>In re Rosenkrantz</u>, 80 Cal. App. 4th 409, 427 (2000); <u>In re Ramirez</u>, 94

15 Cal. App. 4th 549, 564 (2001) and <u>In re Rosenkrantz</u>, 29 Cal. 4th 616 (2002).  Petitioner then points

16 to <u>McQuillon</u> for the proposition that the statutory construction of section 3041 dictates that the

17 burden of proof shifts to the state to prove petitioner falls into the public safety exception.

18 Petitioner's reliance on <u>McQuillon</u> is misplaced.  In <u>McQuillion</u>, the Ninth Circuit reiterated its

19 holding in <u>Jancsek</u> that "the fundamental fairness guaranteed by the Due Process Clause does not

20 require courts to set aside decisions of prison administrators that have *some* basis in fact."

21 <u>McQuillon</u>, 306 F.3d at 904 (internal quotation marks omitted) (emphasis in original), quoting

22 <u>Jancsek</u>, 833 F.2d at 1390 (citations omitted).  This court finds no authority for petitioner's proposed

23 burden-shifting scheme.  Consequently, consistent with Ninth Circuit precedent, this court must

24 employ "some evidence" as the proper standard to use in evaluating a habeas petitioner's challenge

25 to a parole board's decision on parole suitability.  Petitioner's allegation therefore does not

26 constitute a cognizable claim and is dismissed without leave to amend.

27         Third, petitioner argues that the suitability factors in California Code of Regulations, Title

28

10

1    15, section 2402[4], are unconstitutionally vague, and that the BPT's reliance solely on those factors to

2    deny petitioner's parole violates his due process rights.  The Ninth Circuit routinely considers

3    factors set forth in California Code of Regulations Title 15, section 2402, in its analysis of the

4    evidence considered by the BPT in its parole decisions.  See, e.g., Biggs, 334 F.3d at 916 (holding

5    that, at least initially, sole reliance on factors set forth by state law is justified); see also Martin v.

6    Marshall, 431 F. Supp. 2d 1038, 1045 (N.D. Cal. 2006) (Patel, J.) (analyzing petitioner's claim in

7    light of factors set out in section 2402 to determine whether there was "some evidence" supporting

8    governor's denial of parole).  Because of the Ninth Circuit's reliance on the factors set forth in

9    section 2402, this court does not find section 2402 unconstitutionally vague.  To the extent that

10   petitioner's allegation relies upon his assertion that the factors set forth in California Code of

11   Regulations, Title 15, section 2402 are unconstitutionally vague, he does not state a cognizable

12   claim, and his allegation is dismissed without leave to amend.

13          However, the federal courts have noted that due process may demand consideration of more

14   than those factors espoused in the state statute.  Biggs, 334 F.3d at 916 (over time, denial of parole

15   based solely on the gravity of petitioner's commitment offense, defined in section 2402, "would

16   raise serious questions" about a due process violation of his liberty interest in parole); Martin, 431 F.

17   Supp. 2d at 1047 (finding that the BPT's reliance on the "unchanging factor" of petitioner's

18   commitment offense violated his due process rights) (citing Biggs, 334 F.3d at 912, 917); cf. Sass,

19   2006 WL 2506393 at *4 (holding that the parole board's denial of parole was supported by some

20   evidence, was not capricious and thus comported with due process requirements; and declining to

21   speculate whether future parole board decisions would violate the requirements of Biggs).  To the

22   extent petitioner alleges that the BPT unconstitutionally denied his parole based solely on section

23   2402's factors related to the commitment offense, petitioner states a cognizable claim best

24   characterized as support for his argument that there is insufficient evidence to deny his parole.

25

26   CONCLUSION

27          On the basis of the record before the court, which at this time consists only of the petition

28

11

1   itself, petitioner has set forth allegations that do not appear vague, conclusory, palpably incredible,

2   patently frivolous or false.  See Hendricks, 908 F.2d at 491.  Thus, the court finds that petitioner has

3   stated cognizable claims for the issuance of a writ of habeas corpus.

4       Having reviewed the petition, the court hereby FINDS and ORDERS THAT:

5       (1)   Petitioner's allegations that the BPT relied on insufficient evidence to deny petitioner

6   parole; that the BPT was biased in its decision to deny petitioner parole; that the BPT's factual

7   findings lacked some indicia of reliability; that the BPT's reasons for denial of parole are

8   inadequate; that the BPT's finding that petitioner undergo further self-help is baseless and that the

9   state court fact-finding process was unreasonable under Supreme Court law state cognizable claims

10  for federal habeas relief.

11      (2)   All other claims are dismissed without leave to amend.

12      (3)   The clerk of this court SHALL, by certified mail:

13          (a) serve a copy of this Order and a copy of petitioner's petition upon the Attorney

14  General of the State of California; and,

15          (b) serve a copy of this Order upon petitioner and petitioner's attorneys;

16      (3)   Pursuant to Habeas Local Rule 2254-6, respondent shall file an answer or other

17  pleading with this court within sixty (60) days of the date of this order.  This answer or other

18  pleading must conform in all respects to 28 U.S.C. section 2254, Rule 5, and SHOW CAUSE why a

19  writ of habeas corpus should not issue.  Respondent shall file with the answer or other pleading a

20  copy of all portions of the trial record that have been previously transcribed and that are relevant to a

21  determination of the issues presented in the petition;

22

23

24

25

26

27

28

12

1

2          (4)      Pursuant to Habeas Local Rule 2254-6, petitioner shall respond to the answer or other

3    pleading by filing a traverse with the court and serving it upon respondent within thirty (30) days

4    after he receives the answer;

5          (5)      This matter shall be deemed submitted as of the date petitioner's traverse is due.  No

6    hearing will be held unless the court so orders at a later date.

7          IT IS SO ORDERED.

8

9    Dated:     Oct. 27, 2006

10                                                                    _____
                                                                       MARILYN HALL PATEL
11                                                                     Judge
                                                                       United States District Court
12                                                                     Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

**ENDNOTES**

1.  All factual information is taken from petitioner's petition, memorandum or the exhibits attached thereto.

2.  This appears to be in error, as the record shows that petitioner was first eligible for parole on April 25, 2002.

3. California Penal Code section 3041 provides in relevant part

> **Parole release date; setting; criteria; review; en banc hearing by the board**
> (a) In the case of any inmate sentenced pursuant to any provision of law, other than Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, the Board of Parole Hearings shall meet with each inmate during the third year of incarceration for the purposes of reviewing the inmate's file, making recommendations, and documenting activities and conduct pertinent to granting or withholding postconviction credit. One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and shall normally set a parole release date as provided in Section 3041.5. . . .

4.  California Code of Regulations, Title 15, section 2402, provides

> **Determination of Suitability.**
> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.
> ©) Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:
> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.

14

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

©) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

15